UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

In re Petition of Bloomfield Investment
Resources Corp. for an Order Directing
Discovery from Ernest Izrailov Pursuant to 28
U.S.C. § 1782

**ORDER**
18 MC 2608 (NGG) (CLP)

------------------------------------------------------------ X

**POLLAK**, United States Magistrate Judge:

On September 28, 2018, Bloomfield Investment Resources Corp. filed a petition requesting an Order pursuant to 28 U.S.C. § 1782, compelling Ernest Izrailov to produce discovery to assist with a proceeding in the Netherlands.

Upon review of the party's submission, this Court grants petitioner's request for assistance.

FACTUAL AND PROCEDURAL BACKGROUND

Bloomfield Investment Resources Corp. ("Bloomfield" or "petitioner") seeks discovery from Ernest Izrailov ("respondent") in connection with a proceeding currently pending in the Rotterdam District Court in the Netherlands, Case No. C/10/479791 (the "Dutch Action"), to collect on a loan owed to Bloomfield by United Meat Group ("UMG") (the "UMG Loan" or the "Loan"). (Pet.[1] ¶ 2). Bloomfield alleges that UMG failed to repay the Loan and that UMG misused or misappropriated funds from the Loan. (Id. ¶ 2).

---

[1] Citations to "Pet." refer to the Ex Parte Petition for Order Under 28 U.S.C. § 1782 Permitting Bloomfield Investment Resources Corp. To Issue Subpoena for the Taking of a Deposition and the Production of Documents from Ernest Izrailov, filed September 28, 2018.

1

1. The Relationship of the Parties

   Bloomfield is a company incorporated under the laws of the British Virgin Islands, founded by two businessmen and philanthropists, David and Simon Reuben. (Id. ¶ 12). UMG is a Russian corporation in the poultry, grain, and animal feed production business. (Id. ¶ 14). According to Bloomfield's petition, the Loan was made through Synergy Hybrid Feeder Fund Ltd. (Id. ¶ 6). Synergy Hybrid Fund Ltd. (the "Synergy Master Fund") is the majority shareholder of Synergy Hybrid Feeder Fund Ltd.; both Funds are incorporated in the Cayman Islands. (Id.) The Synergy Master Fund is the sole shareholder in UMG. (Id.) During the relevant period, Ovester Group Inc. ("Ovester") owned a controlling interest of 50.05% in Synergy Master Fund. (Id.)

   Respondent Izrailov resides in the Eastern District of New York and served as director of Ovester during the relevant time period, having supervisory authority over the operations of both Ovester and its subsidiaries, including the Synergy Master Fund and UMG. (Id. ¶ 7).

2. The UMG Loan and Collection Efforts

   Bloomfield alleges that in 2011, it made a $25 million loan to UMG, which by its terms became due in November 2013. (Id. ¶ 12). Over the course of 2014, UMG agreed to repay the Loan and finalized a repayment plan in November 2014. (Id. ¶ 15). As part of the repayment plan, UMG transferred $15 million into an account at Demir-Halk Bank in the Netherlands (the "DHB account"). (Id.) According to Bloomfield, the parties agreed that the monies in the DHB account would be used to partially repay the UMG Loan, and UMG authorized a two-signature policy on the account such that both representatives of UMG and Bloomfield had to agree on transactions involving the account. (Id. ¶ 16).

Bloomfield alleges that in May 2015, Ovester redeemed certain shares that it held in the Synergy Master Fund and used the proceeds to repay a $2 million portion of the UMG Loan. (Id. ¶ 8). Petitioner notes that it is unclear why Ovester, which was not indebted to Bloomfield, agreed to repay portions of the UMG Loan. (Id.)

3. The Dutch Litigation

On June 16, 2015, Bloomfield initiated attachment proceedings in the Netherlands (the "Dutch Summary Proceedings"), after learning that UMG had unilaterally asked DHB to terminate the two-signature policy so that $2.9 million could be transferred from the DHB account without Bloomfield's consent. (Id. ¶¶ 18, 19). Bloomfield asked the Dutch Court to levy prejudgment attachment by garnishment on the DHB account to prevent UMG from unauthorized transfers from the account. (Id. ¶ 19). On June 17, 2015, an order of attachment was issued in the Dutch Summary Proceedings, allowing Bloomfield to levy prejudgment attachment by garnishment from the DHB account for a period of 28 days (the "DHB Attachment"). (Id. ¶ 20).

On July 2, 2015, UMG petitioned the Dutch Court to lift the DHB Attachment, arguing that it was not obligated to repay the Loan because Bloomfield had not loaned the monies but rather was an indirect shareholder in UMG through an investment in the Synergy Master Fund. (Id. ¶¶ 21, 22). UMG further argued that it needed access to the funds in the DHB Account to make interest payments to bondholders of a wholly owned subsidiary. (Id. ¶ 23).

On July 15, 2015, the Dutch Court issued a written decision, denying the request to lift the DHB Attachment, but releasing $3.3 million from the DHB account to allow UMG to make interest payments on certain bonds issued by UMG Finance B.V. (Id. ¶ 25). The Dutch Court

3

found that the evidence "lend[s] support to the view adopted by Bloomfield," that the $25 million was intended as a loan/deposit and that UMG had promised to repay Bloomfield. (Id. ¶ 26). However, the Dutch Court held that it required additional evidence to ultimately resolve the merits of the dispute and that a second, separate lawsuit would be required. (Id. ¶ 27). In compliance with the Dutch Court's direction, Bloomfield initiated a plenary action (the "Dutch Action") against UMG on August 11, 2015, arguing that UMG was obligated to repay the balance of the loan. (Id. ¶ 29).[2]

Thereafter, Bloomfield and UMG entered into settlement discussions, resulting in a Non-Binding Term Sheet dated June 20, 2016 (the "Term Sheet"), laying out steps to ensure repayment. (Id. ¶ 31). The parties' obligations under the Term Sheet were contingent on the parties reaching a subsequent binding agreement. (Id.) When UMG refused to enter into a subsequent binding agreement, the parties entered into an escrow agreement (the "Escrow Agreement"), instead. (Id. ¶ 32). The Escrow Agreement, dated August 31, 2016, allocated $4.5 million to be placed in escrow and released to Bloomfield if UMG failed to meet certain obligations. (Id. ¶¶ 32, 33). In order to fund the Escrow Agreement, Bloomfield agreed to lift the DHB Attachment, with the stipulation that $4.5 million be transferred into the escrow account. (Id. ¶ 34). The parties also agreed to stay the Dutch Action to allow UMG to comply with the agreed-upon terms of the Term Sheet and Escrow Agreement. (Id. ¶ 35).

UMG ultimately failed to meet its obligations under the escrow agreement, even after an extension of the deadline. (Id. ¶ 36). As a result, Bloomfield directed the escrow agent to

---

[2] UMG filed a second petition to lift the DHB Attachment on December 29, 2015; that was dismissed by the Dutch Court on January 14, 2016. (Id. ¶ 30).

4

release the $4.5 million to Bloomfield, leaving a balance owed of $18.5 million under the UMG Loan. (Id.)

On April 4, 2017, Bloomfield asked the Dutch Court to lift the stay of the Dutch Action, and on January 10, 2018, the Dutch Court accepted jurisdiction of the matter. (Id. ¶¶ 37, 38). Pursuant to the Dutch Court's order, UMG filed a statement of defense on the merits, which included a counterclaim. (Id. ¶ 39). The Dutch Court has scheduled a hearing in this matter for February 12, 2019. (Ltr.[3] at 1). Bloomfield is permitted to file its statement of defense and present evidence up to two weeks prior to the hearing, at which point Bloomfield also intends to file its statement of defense in response to UMG's counterclaim. (Pet. ¶ 39).

4. Discovery Sought from Izrailov

Bloomfield filed this Petition seeking discovery from respondent Izrailov. As noted, Izrailov served as a director of Ovester during the period that Ovester redeemed shares in the Synergy Master Fund to repay $2 million toward the UMG Loan. (Id. ¶ 8). Ovester also participated in the June 2016 proposal to repay another $3 million of the UMG Loan. (Id.) Bloomfield further alleges that proceeds of the UMG Loan were transferred to JSC Agro-Industrial Complex "Maximovsky" ("APK"), a pig farming and pork production company – a transfer that Bloomfield alleges was in violation of the terms of the Loan. (Id. ¶ 9). Izrailov is alleged to have been a former employee of APK, employed in as sales capacity. (Id.) Consequently, Bloomfield argues that Izrailov has access to pertinent documents and information relating to the UMG loan, "including information related to obligations to repay the UMG Loan,

---

[3] Citations to "Ltr." refer to petitioner's letter, filed on December 4, 2018. Petitioner indicates in the letter that pursuant to the procedures of the Dutch Court, petitioner needs to hold any deposition on or before January 23, 2019.

repayments of the UMG Loan, alleged unauthorized transfers made to APK, the course of dealing between . . . Petitioner and UMG, and other issues to be adjudicated in the Dutch Action." (Id. ¶ 10).

The information sought by Bloomfield relates to respondent's position in and familiarity with Ovester and APK and their involvement in the UMG Loan. (Id. ¶ 41). Bloomfield believes that Izrailov has knowledge of the business relationships, the terms of the Loan, UMG's obligation to repay, as well as information regarding UMG's use of the proceeds of the Loan, and the partial repayment of the Loan, all of which are significant issues before the Dutch Court in the Dutch Action. (Id. ¶¶ 41, 42). Bloomfield seeks documents from Izrailov, as well as a deposition relating to Izrailov's position in and familiarity with Ovester and APK, as well as his connection to the UMG Loan and the parties' course of dealing with respect to the Loan. (Id. ¶ 44).

## DISCUSSION

1. Legal Standards

    a. 28 U.S.C. § 1782

A discovery request under Section 1782 requires two inquiries: "'first, whether the district court is authorized to grant the request; and second, if so, whether the district court should exercise its discretion to do so.'" In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf, No. M19 CV 88, 2006 WL 3844464, at *3 (S.D.N.Y. Dec. 29, 2006) (quoting In re Application of Grupo Qumma, S.A., No. M8 CV 85, 2005 WL 937486, at *1 (S.D.N.Y. Apr. 22, 2005)); see also Schmitz v. Bernstein, Liebhard & Lifshitz, LLP, 376 F.3d 79, 83-84 (2d Cir. 2004).

A district court has the authority to grant a Section 1782 request when: 1) the party subject to discovery requests resides in or is found in the district of the district court; 2) the party seeking discovery intends to use it in a proceeding before a foreign tribunal; and 3) "the application [is] made by a foreign or international tribunal or any interested person." 28 U.S.C. § 1782; see In re Application of Gianoli Aldunate, 3 F.3d 54, 58 (2d Cir. 1993).

If the discovery request satisfies the threshold for district court authorization, the court "must then exercise its discretion as to whether and what extent to lend its assistance." See In re Gemeinshcaftspraxis Dr. Med. Schottdorf, 2006 WL 3844464, at *3; see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264 (2004). Although no one factor should be considered dispositive, the court, in exercising its discretion, may consider the following four factors deemed relevant by the Supreme Court:

1) Whether "the person from whom discovery is sought is a participant in the foreign proceeding."
2) "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance."
3) "Whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
4) Whether the § 1782(a) request is "unduly intrusive or burdensome," in which case requests may be rejected or narrowed.

Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. at 264-65.

However, the discretion of the district court "is not boundless." Schmitz v. Bernstein, Liebhard & Lifshitz, LLP, 376 F.3d at 84. Rather, the court "must exercise [its] discretion . . . in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to

7

provide similar means of assistance to our courts.'" Id. (quoting In re Application for an Order Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 78 (2d Cir. 1997)).

2. Analysis

    a. The Court Has Authority to Grant the Petition

In considering the three statutory requirements of Section 1782, the Court finds that it has the authority to grant Bloomfield's petition seeking assistance in aid of the foreign proceeding.

First, Ernest Izrailov resides in this district. According to an Accurint report generated by counsel for Bloomfield on August 20, 2018, Izrailov has resided at several addresses in Brooklyn, New York since 2011. (Pet. ¶ 53; Cooper Decl., Ex. A[4]). His most recent and current address is at 2525 E. 16th Street, Apt. 1, Brooklyn, New York. (Id.)

Second, Bloomfield seeks the discovery for use before the Rotterdam District Court in the Netherlands, clearly a "foreign tribunal." (Id. ¶ 56). Third, Bloomfield is an "interested party" because it is a party to the Dutch Action, and thus has significant "'participation rights' in the foreign action." (Id. ¶ 47 (quoting Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. at 256-57)); see also In re Application of Gianoli Aldunate, 3 F.3d at 57 (describing the drafting history of Section 1782 and highlighting that the 1964 amendments permitted private litigants to initiate requests in addition to foreign tribunals and officials).

Therefore, there is authority to grant the petition under Section 1782.

---

[4] Citations to "Cooper Decl., Ex. A" refer to an Accurint report, generated August 20, 2018, attached to the Declaration of Steven Cooper in Support of Ex Parte Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 as Exhibit A.

b. <u>The Discretionary Factors Favor Granting the Petition</u>

Turning to the four discretionary factors established in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, the Court finds that all four weigh in favor of granting the Petition.

i. <u>Izrailov is Not a Participant in the Dutch Action</u>

The first factor considers whether the person from whom discovery is sought is a participant in the foreign proceeding. If the person is a participant before the foreign tribunal, "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. at 264. Indeed, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." <u>Id.</u>

Based on the papers before this Court, Izrailov is neither a party to nor a participant in the Dutch Action. (Pet. ¶ 59). Since he resides in the United States and is not a party to the Dutch Action, the Dutch Court does not have the jurisdiction over Izrailov necessary to obtain his testimony and any documents sought by Bloomfield. Therefore, the Court finds that the first discretionary factor weighs in favor of granting Section 1782 assistance.

ii. <u>There is No Evidence that this Court's Assistance Would Offend the Netherlands</u>

The second discretionary factor examines the "nature of the foreign tribunal, character of the proceedings underway abroad, and the receptivity of the foreign government or the court. . . ." <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. at 264. In this analysis, the Court should consider: "(1) whether United States assistance would offend the foreign

country, and (2) whether the material sought is admissible in the foreign tribunal." In re Gemeinschaftspraxis Dr. Med. Schottdorf, 2006 WL 3844464, at *6 (internal citations omitted).

The Second Circuit has instructed district courts to be liberal in permitting requested discovery. Id. at *5. In denying such requests, district courts should only consider "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." In the Matter of Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1100 (2d Cir. 1995). Such authoritative proof "has been found to exist where the representative of a foreign sovereign has expressly and clearly made its position known." Gemeinschaftspraxis Dr. Med Schottdorf, 2006 WL 3844464, at *5 (citing Schmitz v. Bernstein, Liebhard & Lifshitz, LLP, 376 F.3d at 84-85). In the absence of this type of "clear directive" from a foreign judicial, executive, or legislative body, district courts should decide whether to grant assistance based on Section 1782's "overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" In the Matter of Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d at 1100 (quoting S.Rep. No. 1580, 88th Cong., 2d Sess. (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3783).

Moreover, authoritative proof does not rest "on equivocal interpretations of foreign policy or law generally." In re Gemeinschaftspraxis Dr. Med Schottdorf, 2006 WL 3844464, at *5. Otherwise, district courts would have to engage in "extensive examination[s] of foreign law regarding the existence and extent of discovery in the forum country" – an outcome the Second Circuit has deemed undesirable. See, e.g., In the Matter of Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d at 1099. If the foreign court disagrees with the United States on its grounds for

assistance, "that court may simply choose to exclude the discovered material from evidence." In re Gemeinschaftspraxis Dr. Med. Schottdorf, 2006 WL 3844464, at *5.

Here, there has been no "authoritative proof" presented that would suggest that the Netherlands would reject evidence obtained through this Section 1782 application, and the Court has no reason to believe that the discovery sought would "offend" the Netherlands. In fact, Bloomfield previously petitioned both this Court and a court in the Southern District of New York, seeking similar types of discovery from other individuals and entities for use in the Dutch Action. See In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Igor Daniloff, et al., No. 18 MC 00742 (E.D.N.Y. March 8, 2018) (seeking discovery from a director and CEO of APK); In re Application of Bloomfield Investment Resources Corp. for an Order Directing Discovery from Elliot Daniloff, et al., No. 15 MC 00220 (S.D.N.Y. July 22, 2015) (seeking discovery from Elliot Daniloff, who was allegedly involved in inducing Bloomfield to make the UMG Loan). In both instances, the courts granted Bloomfield's petition, finding that the discovery requested would benefit the litigation in the Netherlands.

Furthermore, the regularity with which U.S. courts grant similar Section 1782 discovery requests for Dutch litigation also suggests that there is little potential offensiveness to such grants. See, e.g., In re Application of Benetton International, N.V., No. 97 CV 1345, 1997 WL 1068669 (E.D.N.Y. April 25, 1997); Eco Swiss China Time Ltd. v. Timex Corp., 944 F. Supp. 134 (D. Conn. 1996); Republic of Ecuador v. Hinchee, 741 F.3d 1185 (11th Cir. 2013).

Accordingly, the second factor weighs in Petitioner's favor.

### iii. The Request is Not An Attempt to Circumvent Dutch Policies

The third discretionary factor directs the district court to consider whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel Corp. v. Advanced Micro Devices, Inc., 524 U.S. at 265.

The information sought from a Section 1782 petition need not also be discoverable in the foreign jurisdiction. Id. at 243. Similarly, the court is not required to determine whether the evidence sought would be admissible in the foreign tribunal. In the Matter of Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d at 1101. Since foreign courts "could always rule upon the propriety of reliance on evidence obtained through the cooperation extended by American courts when it was presented to them," drafters of the statute "regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on discoverability and admissibility under foreign law." Id. (quoting Hans Smit, Recent Developments in International Litigation, 35 S. Tex. L.J. 215, 235 (1994)).

Here, there is no evidence that Bloomfield is attempting to circumvent foreign proof-gathering restrictions. Similarly, Bloomfield's request does not appear to violate any Dutch policies. The fact that Bloomfield could not obtain discovery from respondent through the Dutch court system does not indicate an attempt to circumvent restrictions. In re Gemeinschaftspraxis Dr. Med Schottdorf, 2006 WL 3844464, at *6. In fact, "in some respects, that is precisely the type of assistance that the statute was designed to afford." Id. (citing In re Application of Imanagement Serv., Ltd., No. 05 MC 89, 2005 WL 1959702, at *3 (E.D.N.Y. Aug. 16, 2005)

(granting a Section 1782 request *because* it might be the only means to obtain the discovery sought)).

Rather, it appears that Bloomfield bases its request for discovery on a good faith belief that the evidence sought will aid in the Dutch Action, particularly given Izrailov's alleged familiarity with the UMG Loan. Therefore, the Court finds that the third factor does not preclude the granting of Bloomfield's Section 1782 assistance.

                iv.   <u>The Discovery Sought is Neither Unduly Intrusive nor Burdensome</u>

Finally, the Court must examine whether the discovery requested is unduly intrusive or burdensome. <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 524 U.S. at 265. The Court's analysis should apply the standards of Rule 26 of the Federal Rules of Civil Procedure. <u>Mees v. Buiter</u>, 793 F.3d 291, 302 (2d Cir. 2015). If the request is found to be disproportionate, then it may be "rejected or trimmed," <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 524 U.S. at 265, with a preference toward limiting rather than denying discovery altogether. <u>Mees v. Buiter</u>, 793 F.3d at 302.

Here, Bloomfield seeks the deposition of Izrailov and the production of documents and communications pertaining to his involvement with the UMG Loan in light of his positions at Ovester and APK. (Pet., App. A[5]). Bloomfield has articulated how the discovery sought would be used in the Dutch Action given Izrailov's role in these companies. (Pet. ¶¶ 41-47). Therefore, the discovery sought "appear[s] to be sufficiently tailored to the litigation issues for

---

[5] Citations to "App. A" refer to the Subpoena to Testify at a Deposition in a Civil Action, filed on September 28, 2018, and attached as Appendix A to the petition.

which production is sought." In re Gemeinschaftspraxis Dr. Med Schottdorf, 2006 WL 3844464, at *6.

As noted, two courts in this Circuit have already granted prior requests by Bloomfield pursuant to Section 1782 for the production of similar documents relating to the Dutch Action. (See Pet., Exs. E & F[6]). In those cases, courts have found that both the statutory requirements of Section 1782 and the four factors outlined in Intel Corp. v. Advanced Micro Devices, Inc. weighed in favor of granting the discovery. The types of documents requested and the nature of the relationships between the parties in these previous subpoenas are similar to the present case. Therefore, it is unlikely that the discovery request would now be considered overly burdensome.

Accordingly, the Court finds that all four factors weigh in favor of Bloomfield's petition for Section 1782 assistance.

CONCLUSION

For the reasons set forth above, the Court grants Bloomfield's petition, and authorizes petitioner to serve this Order and all papers submitted with the petition, as well as the subpoenas annexed to the Petition as Appendix A upon Ernest Izrailov.[7] Moreover, the Court Orders respondent to comply with such subpoenas in accordance with, and subject to his rights under,

---

[6] Citations to "Ex. E" refer to the ex parte petition filed by Bloomfield in the Southern District of New York, and the Court's corresponding Order granting such petition, attached as Exhibit E to the instant petition. Citations to "Ex. F" refer to the ex parte petition filed by Bloomfield in the Eastern District of New York, and the Court's corresponding Order granting such petition, attached as Exhibit F to the instant petition.

[7] The subpoena currently requires respondent to appear for a deposition on October 31, 2018. (See App. A). Since that date has already passed, respondent is required to appear on January 7, 2019, or any date mutually agreed upon by petitioner and respondent.

the Federal Rules of Civil Procedure and the Rules of this Court. Finally, the Court retains jurisdiction over this matter for further proceedings as may be necessary to effectuate and enforce this Order.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
December 6, 2018

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York